# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                    |   |                      |
|--------------------|---|----------------------|
|                    | : |                      |
|                    | : |                      |
| TANYA GILLESPIE    | : |                      |
|                    | : |                      |
|                    | : |                      |
| v.                 | : | Civil No. CCB-10-3332 |
|                    | : |                      |
|                    | : |                      |
| RUBY TUESDAY, INC. | : |                      |
|                    | : |                      |
|                    | : |                      |

## MEMORANDUM

Plaintiff Tanya Gillespie has filed a negligence action against Ruby Tuesday, Inc.  Her claims arise from injuries sustained when a light fixture fell from the restaurant's ceiling and struck her on the head while she was eating lunch.  Following discovery, Ruby Tuesday filed a motion for summary judgment, contending that Ms. Gillespie failed to establish a prima facie case of negligence.  (ECF No. 36.)  Ms. Gillespie subsequently filed a motion for spoliation sanctions.  (ECF No. 41.)  The matter has been fully briefed, and no hearing is necessary.  *See* Local Rule 105.6.  For the reasons set forth below, the court will deny Ruby Tuesday's motion for summary judgment.  Furthermore, finding that the case is entitled to proceed, the court will deny Ms. Gillespie's motion for spoliation sanctions without prejudice.

### Background

On October 27, 2007, Tanya Gillespie went to a Ruby Tuesday restaurant in Aberdeen, Maryland for lunch.  A waiter showed Ms. Gillespie and her three colleagues to a table.  Before seating Ms. Gillespie and her party, the waiter stood on a chair and adjusted the lamp hanging

over their table.  About thirty minutes later, the lampshade suddenly fell from the ceiling and

struck Ms. Gillespie's head and neck.

The light fixture in question is a Tiffany-style pendant lamp that was hanging from the

ceiling over the dining tables in the restaurant.  The lampshade was 24 inches and consisted of

"colored, decorative panes secured to a welded metal frame."  (ECF No. 37, p. 2.)  The lamp was

manufactured by a company called Unique Lighting and installed by an electrician hired by the

building's general contractor.  (*Id.*)  The lamp hung from the ceiling on metal chains, and the

height of the lamp could be adjusted using hooks to shorten or lengthen the chain.  Ruby

Tuesday estimates that more than 14,380 Tiffany-style lamps were used in Ruby Tuesday

restaurants over a 20-year period.  (*Id.*)  According to Ruby Tuesday, the Tiffany-style lights

were removed from all Ruby Tuesday restaurants over the course of 2007 as part of a "re-

imaging" initiative by the corporate owner.  (*Id.* at 3.)

Photographs taken by the plaintiff after the incident indicate that the welding on the upper

portion of the shade failed.  When the lampshade fell, the upper portion remained attached to the

chain while the lower portion fell onto Ms. Gillespie.  Neither the plaintiff nor the defendant

claims to know why the lamp broke.  Furthermore, the lamp is no longer available for inspection.

According to Ruby Tuesday, the company "attempted to preserve the shade after the incident,"

but the lamp was misplaced.  (*Id.* at 5-6.)  Senior Regional Partner Rob Prunty stated that Ruby

Tuesday disposed of the lamp "in [the] ordinary course of business."  (ECF No. 42, Exh. 5, p.1.)

In its motion for summary judgment, the defendant argues that Ms. Gillespie failed to

make a prima facie case for negligence.  Ruby Tuesday contends that as a business invitee, Ms.

Gillespie must show that Ruby Tuesday either "created the dangerous condition, or had actual or

constructive knowledge of it" in order to prevail in an action for negligence under Maryland law.

*Carter v. Shoppers Food Warehouse MD Corp.,* 126 Md. App. 147, 163 (1999).  According to Ruby Tuesday, Ms. Gillespie has presented no evidence that Ruby Tuesday created a dangerous condition that caused the lampshade to fall or that Ruby Tuesday had actual or constructive knowledge of a dangerous condition on its premises.  (ECF No. 37, p. 9, 15.)  Ruby Tuesday claims that Ms. Gillespie cannot recover because her claims are based on "mere speculation or conjecture."  (*Id*. at 10.)

Ruby Tuesday also argues that Ms. Gillespie cannot rely on *res ipsa loquitur* to create an inference of negligence in this case.  Ruby Tuesday argues that *res ipsa loquitur* is inapplicable because the lamp was not in Ruby Tuesday's exclusive control and, in any event, the failure of the lamp is too complex and technical to permit a jury to infer negligence.  (ECF No. 45, p. 9, 15.)  Ruby Tuesday also argues Ms. Gillespie "cannot reply on *res ipsa* because she has all of the principle [sic] evidence and could have proven her case had she conducted proper discovery."  (*Id.* at 7.)  Ruby Tuesday faults Ms. Gillespie for failing to provide expert testimony as to the cause of the lamp's failure.  (ECF No. 37, p. 6.)

In her opposition motion, Ms. Gillespie argues that Ruby Tuesday was negligent because it created the dangerous condition that led to the lampshade falling on her head.  She urges the court to find that the waiter caused the lamp to fall by adjusting it shortly before it broke.  (ECF No. 43, p. 7.)  Moreover, she argues that her inability to identify the cause of the incident with greater specificity is a result of "Ruby Tuesday's complete disregard for preserving the very thing that struck Ms. Gillespie on the head."  (*Id*.)  Ms. Gillespie claims that "[w]ithout examination of the entire light fixture, and in particular, the area of defect, it is impossible to state precisely the exact cause of the accident."  (*Id.*)

Furthermore, Ms. Gillespie argues that the court should allow the jury to infer negligence based on *res ipsa loquitur*.  She argues she has met the three requirements for *res ipsa loquitur* by showing: "(1) a casualty of a kind that does not ordinarily occur absent negligence, (2) that was caused by an instrumentality exclusively in the defendant's control, and (3) that was not caused by an act or omission of the plaintiff." *Holzhauer v. Saks & Co.*, 346 Md. 328, 335-36 (1997) (citing *Dover Elevator v. Swann*, 334 Md. 231, 236-37 (1994)).

## Legal Standard

*Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c) (2).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Whether a fact is material depends upon the substantive law.  *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).  The court must "view the facts and draw reasonable inferences 'in the light most favorable to the

party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)

(alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the

court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt,* 999 F.2d 774, 778-

79 (4th Cir. 1993) (internal quotation marks omitted).


*Negligence and Res Ipsa Loquitur*

Under Maryland law, a party seeking to recover for negligence must establish four

elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the

defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the

loss or injury proximately resulted from the defendant's breach of the duty." *Casey v. Geek

Squad Subsidary Best Buy Stores, L.P.,* 823 F. Supp. 2d 334, 350 (D. Md. 2011) (quoting

*Horridge v. St. Mary's County Dept. of Soc. Services*, 382 Md. 170, 182 (2004)).

As Ruby Tuesday stipulated, Ms. Gillespie is properly classified as a business invitee.

(ECF No. 37, p. 8.)  The duty owed to an invitee is "to use reasonable and ordinary care to keep

[the] premises safe for the invitee and to protect [the invitee] from injury caused by an

unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety

will not discover." *Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006) (internal quotations

omitted).   Ruby Tuesday is not an "insurer of [Ms. Gillespie's] safety," but nonetheless owes

Ms. Gillespie "the duty to use ordinary care to have its premises in a reasonably safe condition."

*Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 335 (2004).

Under some circumstances, a plaintiff seeking to make a prima facie case of negligence

may invoke the doctrine of *res ipsa loquitur.*  "The doctrine of *res ipsa loquitur* allows a plaintiff

the opportunity to establish a prima facie case when he or she could not otherwise satisfy the traditional requirements for proof of negligence." *Vito v. Sargis & Jones, Ltd.,* 108 Md.App. 408, 417 (internal quotation marks omitted). *Res ipsa loquitur* is "merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident . . . ." *Norris,* 159 Md. App. at 329 (*quoting Chesapeake & Potomac Telephone Co. of Maryland v. Hicks,* 25 Md.App. 503, 512 (1975)). In other words, *res ipsa loquitur* "describes a set of evidentiary conditions that permit, but do not require, a fact finder to infer negligence based upon proof that certain facts are more probable than not." *Tucker v. Univ. Specialty Hosp.*, 166 Md. App. 50, 58-59 (2005).

As noted, a plaintiff seeking to invoke *res ipsa loquitur* must present evidence of: "(1) a casualty of a kind that does not ordinarily occur absent negligence; (2) that was caused by an instrumentality exclusively in the defendant's control; and (3) that was not caused by an act or omission of the plaintiff." *Holzhauer,* 346 Md. at 335-36. When those conditions are met, "[r]elaxation of the normal rules of proof is thought to be justified because the instrumentality causing injury is in the exclusive control of the defendant, and it is assumed he is in the best position to explain how the accident happened." *Peterson v. Underwood,* 258 Md. 9, 19 (1970).

Importantly, *res ipsa loquitur* does not operate to shift the burden of proof in a negligence case to the defendant. Rather, it places on the defendant "the duty of going forward with the evidence to explain or rebut, if he can, the inference that he failed to use due care . . . ." *Munzert v. American Stores*, 232 Md. 97, 103 (1963).

### Discussion

In this case, Ruby Tuesday has rightly noted the absence of evidence to support a traditional negligence claim. Ms. Gillespie has not set forth direct evidence that Ruby Tuesday

either caused the dangerous condition that led to the lampshade falling on her head or had any

notice of the condition.  Even viewed in the light most favorable to Ms. Gillespie, there is not

enough evidence to sustain a traditional negligence claim against Ruby Tuesday.  Accordingly,

the issue for the court is whether *res ipsa loquitur* applies such that a jury may properly infer

negligence.  If *res ipsa loquitur* applies, "it permits an inference of actionable negligence in

some unspecified way based on circumstantial evidence of events, even though the plaintiff [is]

unable to prove a specific act."  *Page v. Nat'l R.R. Passenger Corp.*, 200 Md. App. 463, 483-84

(2011) (internal quotations omitted).

In this case, neither party argues that the falling lampshade was "caused by an act or

omission of the plaintiff."  By all accounts, Ms. Gillespie did not touch the lampshade or do

anything to cause the lampshade to fall.  Insofar as Ms. Gillespie "used" the lamp at all, it was

simply by sitting underneath it.  *See Nalee, Inc. v. Jacobs,* 228 Md. 525, 530 (1962) (defendant

engaged in "perfectly expectable use . . . in a perfectly expectable way").  Therefore, the parties'

dispute revolves around the other two requirements for *res ipsa loquitur* – whether the falling

lampshade is an incident "of a kind that does not ordinarily occur absent negligence" and

whether the lamp was "exclusively in the defendant's control."

Ruby Tuesday argues that the plaintiff may not invoke *res ipsa loquitur* because the lamp

was not in Ruby Tuesday's exclusive control.  Ruby Tuesday contends that Ms. Gillespie failed

to show that it had control of the lamp "at the time the defect was created."  (ECF No. 45, p, 17.)

Because she cannot show when the defect was created, Ruby Tuesday argues, Ms. Gillespie

cannot establish the defendant's exclusive control at that time, and *res ipsa loquitur* cannot

apply.

Ruby Tuesday misstates the standard for finding the element of exclusive control.  A

plaintiff seeking to invoke *res ipsa loquitur* need only show that the evidence "afford[s] a

rational basis for concluding that the cause of the accident was probably such that the defendant

would be responsible for any negligence connected with it."  *Norris*, 159 Md.App. at 333

(internal quotations omitted).  Maryland courts have emphasized that "total and complete control

of the instrumentality of harm is not required. . . . The plaintiff is not required in his proof to

exclude remotely possible causes and reduce the question of control to a scientific certainty."

*Tucker,* 166 Md. App. at 66-67 (internal citations omitted).  Indeed, "'[c]ontrol,' if it is not to be

pernicious and misleading, must be a very flexible term."  *Norris*, 159 Md.App. at 332 (quoting

Prosser, *Law of Torts* (4th ed.) p. 250).

The Court of Special Appeals of Maryland has rejected the narrow conception of

"exclusive control" advanced by the defendants.  In *Norris v. Ross Stores*, the plaintiff sought to

invoke the doctrine of *res ipsa loquitur* when she was injured by the sudden collapse of a glass

shelving unit at a grocery store.  *Id.*  The Court of Special Appeals vacated a lower court finding

that the plaintiff failed to establish the defendant's exclusive control over the shelves.  In so

doing, the court rejected the argument that a plaintiff must identify the precise act of negligence

in order to demonstrate the defendant's exclusive control:

> [T]he exclusive control requirement of the *res ipsa loquitur* doctrine requires that Norris
> demonstrate that Ross had exclusive control over the instrumentality at the time of the
> alleged negligent act.  Here, the negligent act could have been the installation of the
> shelving unit, but the jury could also reasonably infer that the negligence was the failure
> to reasonably maintain the shelving units.  Regardless of who installed the shelving units,
> we cannot say that falling shelving units are the sort of event that ordinarily happens if
> those who have the management and control exercise proper care.

*Id*. at 334 (emphasis omitted).  Ruby Tuesday argues that *Norris* is distinguishable because

"there the defendant had control over the shelves from the time of the earliest possible negligent

act."  (ECF No. 45, p. 17).  This mischaracterizes the finding of the *Norris* court, which

explicitly reserved identification of the negligent act for determination by the jury and nonetheless found that the defendant's exclusive control had been established.[1]

The court rejects Ruby Tuesday's contention that Ms. Gillespie must identify the precise mechanism of failure in order to establish Ruby Tuesday's exclusive control of the lamp.  By definition, *res ipsa loquitur* allows a jury "to infer negligence on the part of a defendant from a showing of facts surrounding the happening of the injury, unaided by expert testimony, *even though those facts do not show the mechanism of the injury or the precise manner in which the defendant was negligent*."  *Meda v. Brown*, 318 Md. 418, 425 (1990) (emphasis added). Requiring the identification of a specific defect or negligent act in order to establish the defendant's exclusive control of the instrumentality would undermine the purpose of *res ipsa loquitur.*  Ms. Gillespie has established Ruby Tuesday's exclusive control by showing that the lamp was hanging from the ceiling of the defendant's restaurant at the time it fell onto her head; Ruby Tuesday has not, at this juncture, rebutted that showing.

With respect to the requirement that the incident be of a kind that does not ordinarily happen absent negligence, Ms. Gillespie has also met her burden.  Maryland courts have observed that this prong of the *res ipsa loquitur* standard entails a common sense inquiry: "[T]he central question involved in the use of the *res ipsa loquitur* doctrine is whether, by relying on common sense and experience, the incident more probably resulted from the defendant's negligence rather than from some other cause."  *Norris*, 159 Md.App. at 331.  Importantly, a plaintiff "is not required to exclude every possible cause for her injuries other than that of

---

[1] The *Norris* court held that the grocery store had exclusive control of the shelves notwithstanding the fact that customers could freely access the shelves.  159 Md.App. at 334.  In this case, access to the hanging lamp was much more restricted to Ruby Tuesday and its agents than the shelves in *Norris*.  Furthermore, as in *Norris*, Ruby Tuesday has "submitted no proof that third parties . . . had tampered with" the lamp. *Id.* at 333.

negligence; she is only required to show a greater likelihood that her injury was caused by the

defendant's negligence than by some other cause." *Id.* at 330-31 (internal quotations omitted).

Maryland courts have applied *res ipsa loquitur* in various circumstances – for example,

when a pile of blocks topples onto a passerby, *Leidenfrost v. Atlantic Masonry,* 253 Md. 244

(1964); when steps crumble beneath a person's feet, *Blankenship v. Wagner,* 261 Md. 37 (1971);

when a soda bottle explodes and strikes its owner in the eye, *Leikach v. Royal Crown Bottling*

*Co. of Baltimore*, 261 Md. 541 (1971); and when glass shelves in a grocery store shatter onto a

shopper, *Norris,* 159 Md. App. 323.  The sudden fall of a hanging lamp is not unlike those

incidents.  Indeed, the Court of Appeals of Maryland has noted that the "'classic pattern' of res

ipsa cases [is one] in which someone is struck by a falling object." *Blankenship*, 261 Md. at 42.

While it does not appear that Maryland courts have considered a factually analogous case, other

state courts have found that falling light fixtures are appropriate subjects for *res ipsa loquitur.*

"In the ordinary course of things, part of a light fixture attached to a building's ceiling does not,

in the absence of negligence, fall and injure an invitee." *Anderson v. Serv. Merch. Co., Inc.*, 240

Neb. 873, 881 (1992) (allowing *res ipsa loquitur* theory to proceed against a store where light

fixture fell into a customer) (internal punctuation and quotations omitted); *see also Rector v.*

*Oliver*, 809 N.E.2d 887, 892 (Ind. Ct. App. 2004) ("Regardless of who installed the light fixture,

we cannot say that a light fixture falling from the ceiling of a business is the sort of event which

ordinarily happens if those who have the management and control exercise proper care.").[2]

---

[2] The conclusion that a jury may infer negligence in this case does not hinge on the unavailability of the
lamp that fell on Ms. Gillespie's head.  Maryland courts have held that the invocation of *res ipsa loquitur*
does not depend on a plaintiff's lack of access to information.  *See Vito,* 108 Md.App. at 431.
Nonetheless, "[t]he justice of the rule permitting proof of negligence by circumstantial evidence is found
in the circumstance that the principal evidence of the true cause of the accident is accessible to the
defendant, but inaccessible to the victim of the accident." *Blankenship*, 261 Md. at 41.  This is certainly
the case here, where Ms. Gillespie is prevented from inspecting the lamp that injured her because Ruby
Tuesday disposed of it.

Maryland courts have declined to apply *res ipsa loquitur* where questions of causation are so complex that a jury cannot reasonably infer negligence based on their common experience.  For example, in *Dover Elevator v. Swann*, 334 Md. at 254, the Court of Appeals of Maryland held that *res ipsa loquitur* was inapplicable in a case involving a broken elevator because "the common knowledge of jurors was insufficient to support an inference that the misleveling was caused by the defendant's negligence."  *Holzhauer*, 346 Md. at 340 (characterizing the holding of *Dover Elevator*).  Instead, the court concluded, the case could be decided based on inference from the expert testimony offered by the defendant.  Courts have reached the same conclusion in medical malpractice cases and cases involving highly technical electronic issues.[3]

The defendants argue that this case presents questions too complex to allow an inference based on *res ipsa loquitur*.  "What forces of physics can cause the soldering in a Tiffany shade to fall are outside the common knowledge of a lay person."  (ECF No. 45, p. 10.)   The questions here, however, are no more complex than in other cases where Maryland courts have allowed the juries to infer negligence.  That a lamp does not ordinarily fall from the ceiling absent negligence is akin to the conclusions, drawn by Maryland courts, that trains do not ordinarily derail, *Page*, 200 Md.App. at 485, and grab bars on bathtubs do not ordinarily detach from the wall, *Apper v. Eastgate Associates*, 28 Md. App. 581, 592-93 (1975) *modified on other grounds,* 276 Md. 698, 350 A.2d 661 (1976).  Any defendant seeking to avoid the inference of negligence could argue

---

[3] *See, e.g., Orkin v. Holy Cross Hosp. of Silver Spring, Inc.*, 318 Md. 429, 433 (1990) ("Resolution of the issues of negligence and causation involved in a case of this kind necessarily requires knowledge of complicated matters, including human anatomy, medical science, operative procedures, areas of patient responsibility, and standards of care.  Complex issues of the type generated by a case of this kind should not be resolved by laymen without expert assistance.  *Res ipsa loquitur* does not apply under these circumstances."); *Casey,* 823 F. Supp. 2d at 356 ("[T]he production of an electrical shock by a personal computer is not so simple an occurrence that the average layperson's understanding and knowledge permit proceeding on a *res ipsa* theory, without expert testimony.") (internal punctuation omitted).

that the finer details of causation exceed the capacity of laymen.  However, the court sees

nothing inherently more complicated about a falling lamp than shattering shelves.  It does not

require any extraordinary or advanced technological or scientific capacity to infer negligence on

the part of Ruby Tuesday where a lamp suddenly crashes into a guest's head.

In moving for summary judgment, Ruby Tuesday argues that Ms. Gillespie failed to

demonstrate that the restaurant created or had notice of the dangerous condition.  Ruby Tuesday

asserts that "Maryland law is well established that the mere happening of an accident does not

mean that someone was negligent."  (ECF No. 37, p. 8.)  In both instances, Ruby Tuesday

overlooks the function of *res ipsa loquitur*, which is to relax otherwise applicable requirements

for negligence actions.  Indeed, the Court of Special Appeals explicitly stated that while "[i]t is

axiomatic that the mere happening of an accident standing alone does not give rise to a

presumption of negligence," that principle "is not applicable . . .  where the doctrine of *res ipsa*

*loquitur* applies."  *Unsatisfied Claim & Judgment Fund Bd. v. Bowles*, 25 Md. App. 558, 563

(1975); *see also Romero v. Brenes*, 189 Md. App. 284, 296 (2009).[4]

Finally, the court emphasizes that the denial of summary judgment does not *compel* a

jury to infer negligence.  Ms. Gillespie continues to bear the ultimate burden of demonstrating

that her injuries resulted from Ruby Tuesday's negligence.[5]  The court merely concludes that a

---

[4] Likewise, the main cases Ruby Tuesday relies upon for the proposition that Ms. Gillespie failed to meet her burden are both cases in which the courts found the *res ipsa loquitur* did not apply because the object that caused injury was not in the defendant's exclusive control.  *See Burkowske v. Church Hosp. Corp.*, 50 Md. App. 515, 523 (1982); *Smith v. Kelly*, 246 Md. 640, 644 (1967).  Because the court has determined that the inference of negligence is permissible in this case, *Burkowske* and *Smith* are inapposite.  (ECF No. 37, p. 15-17.)

[5] Ruby Tuesday overlooks this distinction in its extensive reliance on a 1902 case, *S. Baltimore Car Works v. Schaefer*, 96 Md. 88 (1902).  In the first instance, it is not clear that *Schaefer* is still valid law, as it has not been cited by a court since 1937 and seems to run contrary to current case law on *res ipsa loquitur*.  Even assuming the continuing viability of the case, however, *Schaefer* focused on a defendant's appeal of a jury verdict against him in a negligence case.  The court reversed the jury's verdict on the grounds that *res ipsa loquitur* could not establish negligence in the face of extensive testimony at trial showing that the defendant had exercised due care.  This case, by contrast, reaches the court at the

jury may infer negligence if it sees fit and that, if it does so, the question of whether Ruby

Tuesday has rebutted the presumption of negligence is also appropriate for resolution by the jury.

      With respect to Ms. Gillespie's motion for spoliation sanctions, the court finds it

unnecessary to rule on the matter at this juncture.  Having concluded that the suit will go

forward, the court will deny the motion for spoliation sanctions without prejudice.

      A separate Order follows.


  May 22, 2012                         /s/

      Date                            Catherine C. Blake

                                 United States District Judge

---

summary judgment stage.  The jury may conclude, based on a full presentation of evidence, that the inference of negligence permitted by *res ipsa loquitur* is not appropriate or that the defendant overcomes the presumption of negligence.